**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

FRANKLIN SAVAGE, *et al.*,

      *Plaintiffs*,

and

UNITED STATES OF AMERICA,

      *Plaintiff-Intervenor*,

v.

POCOMOKE CITY, et al.,

      *Defendants*.

Case No. 1:16-cv-00201-ELH

**CONSENT DECREE BETWEEN PLAINTIFF FRANKLIN SAVAGE, PLAINTIFF-
INTERVENOR UNITED STATES, AND STATE DEFENDANTS**

## I.    INTRODUCTION

1.    This action comes before this Court upon the filing of a Complaint by Plaintiffs Franklin Savage, Kelvin Sewell, and Lynell Green (collectively "Plaintiffs") on January 20, 2016. Plaintiffs filed the operative Second Amended Complaint on September 29, 2016, pleading claims against Defendants Pocomoke City, former City Manager Russell Blake, former City Manager and City Attorney Ernest A. Crofoot, Mayor Bruce Morrison,  the County Commissioners of Worcester County, the State of Maryland, Worcester County Sheriff Reggie Mason, Worcester County Sheriff's Office  members (former) Chief Deputy Dale Smack, Sergeant Nathaniel Passwaters, and Corporal Rodney Wells, and Sergeant Patricia Donaldson and Corporal Brooks Phillips of the Maryland State Police. Plaintiff Franklin Savage's claims arise from his employment with the

Pocomoke City Police Department and subsequent detail to the Worcester County Criminal Enforcement Team and include, *inter alia*, allegations of race-based employment discrimination and retaliation. The United States of America ("United States") moved to intervene in this action, intervention was granted, and the United States' Complaint in Intervention was filed on December 1, 2016. The United States' Complaint in Intervention alleges violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e ("Title VII") against Pocomoke City, the State of Maryland, and the Worcester County Sheriff, in his official capacity (currently Matthew Crisafulli, formerly Reggie Mason).

2.      This Court has jurisdiction of the action under 42 U.S.C. §§ 1988 and 2000e-5(f), and 28 U.S.C. §§ 1331, 1343(3), 1343(4) and 1345.

3.      Plaintiff Franklin Savage, the United States, and Defendants State of Maryland and Sheriff Matthew Crisafulli, in his official capacity as the Sheriff of Worcester County, Maryland (collectively "State Defendants"), desiring that certain claims be settled by an appropriate Consent Decree ("Decree"), and without the burden and risks of protracted litigation, agree to the jurisdiction of this Court over the parties and the subject matter of this action. Plaintiff Franklin Savage, the United States, and State Defendants also hereby waive, for purposes of this Decree only, hearings and findings of fact and conclusions of law on all issues pertaining to the parties to this Decree (including the liability alleged by Plaintiffs and the United States under Title VII, 42 U.S.C. §§ 2000e, and the liability alleged by Plaintiffs under 42 U.S.C. § 1981, 42 U.S.C. § 1983, and/or 42 U.S.C. § 1985) and further agree to the entry of this Decree as final and binding between them with regard to the issues raised in the Second Amended Complaint filed by Plaintiffs and the claims raised in the United States' Complaint in Intervention in this case. Plaintiff Savage also

agrees to dismiss all claims he has pleaded against Nathaniel Passwaters, Brooks Phillips, Dale Smack, Dale Trotter, Rodney Wells, and Patricia Donaldson.

4. This Decree, being entered into with the consent of Franklin Savage, the United States, and State Defendants shall not constitute an adjudication or finding on the merits of the case as to any party.

5. In resolution of this action, Plaintiff Franklin Savage, the United States, and State Defendants hereby AGREE to, and the Court expressly APPROVES, ENTERS and ORDERS, the following:

## II. PARTIES AND DEFINITIONS

6. "Days" refers to calendar days. If any deadline referenced in this Decree falls on a weekend or federal holiday, the deadline will be moved to the next business day.

7. "Entry" of the Decree refers to the date that the Court enters this Decree.

8. "State Defendants" refers collectively <u>only</u> to Sheriff Crisafulli, in his official capacity, and the State of Maryland and includes their current, former and future agents, employees, officials, designees, and successors in interest. Sheriff Crisafulli and the State of Maryland will at times be referred to separately as it may relate to specific obligations for Sheriff Crisafulli under this Decree, but not for the entire State of Maryland.

9. "Parties" refers collectively to Plaintiff Franklin Savage, the United States, and State Defendants.

10. "Worcester County Criminal Enforcement Team" or "CET" refers to the former work location of Franklin Savage while he was on a detail from the Pocomoke City Police Department. The CET is operated and controlled by Sheriff Crisafulli as part of the Worcester County Sheriff's Office ("WCSO") and includes staff members from other participating agencies,

3

who are assigned to work in the CET pursuant to a memorandum of understanding. The CET and the WCSO are mentioned throughout this decree, but are not legally separate entities.

11. "Discrimination" refers to employment discrimination on the basis of race, including racial harassment.

## III. LIMITATION ON RIGHTS TO ENFORCE TERMS OF DECREE

12. The Parties agree that Plaintiffs Kelvin Sewell and Lynell Green have no rights under this Decree to enforce the terms thereof or otherwise.

13. Plaintiff Franklin Savage's rights to enforce the terms of this Decree are limited to the enforcement of State of Maryland's obligations under Section VII of this Decree and any other provisions that may be ancillary to the enforcement of Section VII. Plaintiff Franklin Savage has no rights to enforce the obligations of the State Defendants under Sections IV, V, VI, and VIII of this Decree.

## IV. GENERAL INJUNCTIVE RELIEF

14. Sheriff Crisafulli, by and through his officials, agents, employees, and all other persons in active concert or participation with Sheriff Crisafulli in the performance of employment or personnel functions for the CET, shall not engage in any act or practice that discriminates against any employee or applicant because of race in violation of Title VII.

15. Sheriff Crisafulli, by and through his officials, agents, employees, and all other persons in active concert or participation with Sheriff Crisafulli in the performance of employment or personnel functions for the CET, shall not discriminate against or in any way adversely affect the terms or conditions of employment of any person because that person has opposed any practice made unlawful by Title VII, filed a charge with the U.S. Equal Employment Opportunity

Commission ("EEOC"), or testified, assisted or participated in any manner in an investigation, proceeding or hearing under Title VII, including this case or this Consent Decree.

## V. DEVELOPMENT AND REVISION OF RELEVANT POLICIES

16.     Within one hundred and twenty (120) days from the date of entry of this Decree, Sheriff Crisafulli shall review and, where needed, revise existing written policies and procedures and/or draft new written policies and procedures applicable to the entire CET, which shall apply to all individuals working in the CET regardless of their home law enforcement agency, related to discrimination to ensure proper handling of complaints, including

    a.  defining the manner in which an individual working in the CET may complain of discrimination.   These procedures shall allow individuals working in the CET (regardless of whether they are employed directly by State Defendants or assigned to the CET by a participating agency) to complain of discrimination or harassment verbally or in writing to any CET supervisor or in their home law enforcement agency, including supervisors who are outside of their direct chain of command;

    b.  establishing a requirement that individuals working in the CET promptly report any complaints or observations of discrimination to the members of the Sheriff's command staff charged with investigating complaints of discrimination, and informing CET supervisors that they may be subject to disciplinary action if they do not take prompt action to ensure that complaints of discrimination are investigated;

    c.  providing for the prompt, thorough, and objective investigation of all complaints of discrimination by either (1) a neutral, unbiased investigator from the Sheriff's Office whose duty it is to conduct internal administrative investigations (and who, within ninety (90) days of the entry of this decree, shall receive training on how to conduct

investigations into complaints of employment discrimination and retaliation), and that any investigations shall be conducted pursuant to the Sheriff's standards for conducting administrative investigations, or when a conflict exists, referring the investigation to a neutral external investigator, and (2) allowing that the home agency of a complainant or an individual alleged to have engaged in misconduct may conduct its own investigation in which Sheriff Crisafulli will cooperate and assist;

d.  requiring the compilation of a report identifying the steps taken during the investigation, a summary of the investigation's findings, and any recommendations for remedial action;

e.  specifying that the complainant and the alleged harasser may be separated (in a way that balances negative impact to the complainant against the potential negative impact to the mission and work of the Sheriff and the CET, considering factors including, but not limited to, the severity and/or pervasiveness of the harassment alleged, the relative seniority and ranks of the complainant and the alleged harasser, the potential harm to the complainant of continued joint work, the potential harm of separation to CET's mission or to officer safety, and any feasible alternatives beyond outright separation and continued joint work) during the pendency of the investigation and after as appropriate; and

f.  describing the appropriate range of remedial and/or disciplinary measures that may follow violations of the policies, including, but not limited to, written or verbal counselling, additional trainings, reports to the home law enforcement agency of the CET member involved, and recommendations for removal from the CET, but expressly

stating that all final disciplinary decisions are reserved to the head of the home law enforcement agency of the CET member involved.

17.     Within one hundred and twenty (120) days from the date of entry of this Decree, Sheriff Crisafulli shall review and, where needed, revise existing written policies and procedures and/or draft new written policies and procedures applicable to the entire CET, regardless of the employees' home law enforcement agency, to appropriately address Title VII's prohibition of discrimination against an individual because s/he has opposed any practice made unlawful by Title VII or because s/he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under Title VII.

18.     Within one hundred and twenty (120) days from the date of entry of this Decree, Sheriff Crisafulli  shall review and, where needed, revise existing written policies and procedures and/or draft new written policies and procedures regarding conflicts of interest to ensure the unbiased enforcement of the policies described in Paragraphs 16 and 17.  This policy must provide that an individual may not investigate or otherwise be involved in the handling of complaints or instances of potential discrimination, harassment, or retaliation if the individual is under investigation for engaging or has been found to have engaged in conduct that violates State Defendants' antidiscrimination polices (including retaliation) or it is reasonably foreseeable that the individual's relationship to one of the persons involved in the complaint could cast doubt on the impartiality of the investigation.

19.     Within one hundred and twenty (120) days of the entry of this Decree, Sheriff Crisafulli shall draft new policies designating Zenita Wickham Hurley, Director and Chief Counsel of Civil Rights and Legislative Affairs for the Maryland Office of the Attorney General, who the parties agree is an appropriate, qualified neutral individual, to oversee compliance with the policies

and procedures described in Paragraphs 16-18 at the CET.  In recognition of the importance of Ms. Hurley's role pursuant to this Decree, she will not share information with nor receive information from any individual who is currently or may in the future provide legal assistance, advice or counsel, and/or services to Sheriff Crisafulli and/or staff of the Worcester County Sheriff's Office. To this end, the State of Maryland shall promptly inform Ms. Hurley of her responsibilities as set forth in the decree and shall ensure a firewall is maintained between Ms. Hurley and any such individual, consistent with the internal policies currently in place for compliance with Maryland Rule of Professional Conduct 1.7.  Sheriff Crisafulli's designation under these policies shall remain in effect for a period of twenty-four (24) months.  Under these policies,

a. Sheriff Crisafulli shall promptly inform Ms. Hurley in writing of all complaints of employment discrimination on the basis of race or retaliation within the CET within ten (10) days of receipt;

b. Sheriff Crisafulli shall provide a copy of the investigative report described in Paragraph 16(c) to Ms. Hurley no later than seven (7) days after the completion of an investigation, but prior to any final determination of findings;

c. Ms. Hurley shall review the investigative report within fifteen (15) days of receipt and determine whether a thorough and objective investigation was completed.  To that end, Ms. Hurley may determine whether additional measures are necessary, including, but not limited to, requiring that further witness interviews or document requests are conducted, and requiring that any investigators with a conflict of interest are removed from the investigation.  In the event Sheriff Crisafulli disagrees with the required additional measures of Ms. Hurley, he must notify the United States of the disagreement and may exercise his rights under Section IX of this Decree and attempt

to resolve any disagreement with the United States in accordance with Section IX of this Decree. Sheriff Crisafulli need not comply with Ms. Hurley's recommendations until those rights are exhausted.

d.  Ms. Hurley shall review the investigative findings and remedial/disciplinary determinations for compliance with policies, and, where such determinations are not in compliance with policies, make de novo determinations based on the complete investigative record and report the determination to the United States. Before making any final remedial/disciplinary determinations, Sheriff Crisafulli must take into consideration the determinations of the Ms. Hurley, or (if not) notify the United States of his intent to disregard Ms. Hurley's findings and with the United States regarding the same, in accordance with Section IX of this Decree. In the event the United States disagrees with Sheriff Crisafulli's final remedial/disciplinary determinations, it may exercise its rights under Section IX of this Decree, and the Sheriff shall not implement final remedial/disciplinary determinations until those rights are exhausted;

e.  Ms. Hurley may make recommendations to CET staff and supervisors regarding proper measures to avoid and promptly remedy racial discrimination and retaliation; and

f.  Sheriff Crisafulli shall make every good faith effort to comply with Ms. Hurley's lawful requests and provide any information and/or cooperation that is legal and necessary in furtherance of Ms. Hurley's duties under this agreement.

20.  No later than one hundred twenty (120) days after the entry of this Decree, Sheriff Crisafulli shall provide copies of any new or revised policies pursuant to Paragraphs 16-19 of this Decree to counsel for the United States. The United States may object to the proposed policies if they do not comport with the terms of this Decree or law (including applicable case law). The

United States will notify Sheriff Crisafulli in writing within fifteen (15) days of receipt of these proposed policies of any objection(s) to the proposed policies and shall specify the nature of the objection.

    a.  If the United States makes no objection(s) within the objection period, Sheriff Crisafulli shall implement the policies within ten (10) days after the end of the objection period.

    b.  If the United States and/or Plaintiff object within the objection period, Sheriff Crisafulli may not proceed to implement any policies pursuant to Paragraphs 16-19 until the objections have been resolved. The Parties will confer in good faith regarding any disagreements concerning the proposed policies prior to instituting proceedings pursuant to Paragraph 35. Within ten (10) days of the resolution of any objections, whether by agreement or by order of this Court, Sheriff Crisafulli shall implement the policies as resolved.

21. Within ten (10) days from the date upon which Sheriff Crisafulli implements the written policies and procedures set forth in Paragraphs 16-19, Sheriff Crisafulli shall take the following steps:

    a.  Distribute copies of any new or revised policies pursuant to Paragraphs 16-19 to all individuals in the following categories:

        1.  CET staff members (both those employed directly by State Defendants and those who are assigned to the CET by a participating agency);

        2.  individuals within the Sheriff's Office who have any involvement in supervising or making decisions regarding CET staff;

3. supervisory and management officials from any participating agency who have supervisory or management responsibilities for staff members assigned to the CET; and

4. individuals with any responsibility for receiving, investigating, or responding to complaints of discrimination or otherwise involved in overseeing compliance with the policies in Paragraphs 16-19 (without regard to whether they work in the CET), including without limitation managers, supervisors, or human resources personnel.

b. Ensure that each individual who is hired for, appointed or assigned to, or selected for positions described in Paragraph 21(a)(1-4) receives a copy of the written policies and procedures described by Paragraphs 16-19 at the time of hire, appointment, assignment, or selection;

c. Certify to the United States, upon request by the United States, that copies of such policies and procedures have been distributed in accordance with Paragraph 21(a); and

d. Publicize such policies and procedures by, *inter alia,* posting them in CET offices, by email to all employees of and/or working in the CET, and on any internet or intranet website used for posting notices or policy changes for or concerning policies and procedures in effect for the CET.

## VI.     TRAINING

22. Within sixty (60) days of the implementation of the new and/or revised policies and procedures described in Paragraphs 16-19, Sheriff Crisafulli will provide training for all individuals working in the CET (regardless of their  home law enforcement agency) in positions described in Paragraph 21(a)(1-4) on prevention of workplace discrimination and harassment, and to familiarize them with the new and/or revised policies and procedures described in Paragraphs

16-19.  This training shall be mandatory for employees of Sheriff Crisafulli with the job duties described in Paragraph 21(a)(1-4).

23.  Training will be performed in conjunction with a qualified EEO professional from outside the Sheriff's Office.

24.  This training shall include, at a minimum,

    a.  a review and explanation of Sheriff Crisafulli's policies and procedures governing harassment, retaliation, and conflicts of interest as described in Paragraphs 16-19 of this Decree;

    b.  an explanation of the types of conduct that may constitute discrimination (including examples), and a statement that discrimination on protected grounds, including harassment based on race, violates Title VII and Sheriff Crisafulli's policy;

    c.  an explanation of protected activity within the meaning of Title VII, the types of actions that may constitute unlawful retaliation (including examples), and that retaliation against an individual who has engaged in protected activity violates Title VII and the Sheriff Crisafulli's policy;

    d.  a description of how and to whom CET staff (including those employed by Sheriff Crisafulli and those assigned to the CET by participating agencies) may complain if they feel they have been subjected to discrimination or retaliation in the workplace, including employees' ability to submit complaints orally or in writing and to complain to a supervisor outside of the employee's direct chain of command;

    e.  a statement of Sheriff Crisafulli's commitment to maintain a workplace free of discrimination and retaliation, to ensure that all complaints of discrimination and retaliation are promptly and thoroughly investigated by unbiased factfinders, and

to implement appropriate disciplinary action when violations of Sheriff Crisafulli's policy regarding discrimination are substantiated;

    f.  a clear statement that supervisors who receive complaints of discrimination or retaliation (written or oral) or who witness or become aware of conduct that may violate Sheriff Crisafulli's policies regarding discrimination and retaliation must take prompt action to ensure that such instances are properly reported and investigated; and

    g.  the disciplinary consequences for violations of Sheriff Crisafulli's policies regarding discrimination and retaliation, including but not limited to verbal or written warnings, suspension or removal (temporary or permanent) from the CET, and/or recommendations for further disciplinary action to the employee's home agency.

25. Sheriff Crisafulli shall administer this training to all individuals who are hired for, appointed or assigned to, or selected for positions described in Paragraph 21(a)(1-4) within sixty (60) days of the time of hire, appointment, assignment, or selection during the life of this Decree.

26. In addition to the training described in Paragraphs 22-25, within sixty (60) days of the implementation of the new and/or revised policies and procedures described in Paragraphs 16-19, Sheriff Crisafulli shall provide certain members, as described in Paragraph 21(a)(2-4), with managerial, investigative, or compliance responsibilities with additional training regarding duties specific to their managerial, investigative, or compliance responsibilities (regardless of their home law enforcement agency). This training shall be mandatory for employees of Sheriff Crisafulli with the job duties described in Paragraph 21(a)(2-4).

    a.  This additional training shall include detailed descriptions of supervisors' and

managers' duties under the policies and procedures, including at a minimum,

1. the ability of CET staff members to complain of discrimination or retaliation (either verbally or in writing) to any CET supervisor or to a supervisor in their home law enforcement agency, even if the supervisor is outside of their chain of command;

2. that individuals with supervisory, management, and decision-making authority for the CET must promptly report and investigate any complaints of discrimination or retaliation they receive pursuant to Sheriff Crisafulli's policy, as well as any potential discrimination or retaliation they observe or become aware of;

3. that staff members may not investigate allegations of potential discrimination or retaliation if they have a conflict as defined by the policy described in Paragraph 18; and

4. that supervisors, managers, and decision-makers may be subject to discipline for failure to execute their duties (including but not limited to their duties to promptly and thoroughly investigate allegations of discrimination or retaliation and to document these investigations) in accordance with these policies and procedures.

b. Sheriff Crisafulli shall administer this additional training to all individuals who are hired for, appointed or assigned to, or selected for positions described in this Paragraph within sixty (60) days of the time of hire, appointment, assignment, or selection for the duration of this Decree.

27.     Sheriff Crisafulli shall keep records reflecting each individual's completion of training and shall certify to the United States, upon request by the United States, that all training required under Section VI has been completed.

## VII.    INDIVIDUAL RELIEF FOR FRANKLIN SAVAGE

28.     In settlement of Plaintiff's claims, as well as the United States' claims, State Defendants agree to promptly seek approval from the Maryland Board of Public Works for payment in the amount of $100,000 in compensatory damages to Franklin Savage. This monetary relief is governed by a separate settlement agreement and release between Plaintiff Franklin Savage and the State Defendants.  Upon approval of payment by the Maryland Board of Public Works, State Defendants shall send payment to Franklin Savage's designated counsel within forty-five (45) days.  If the State Defendants cannot send payment within this timeframe due to exigent circumstances beyond their control, State Defendants may request an extension of this deadline from Plaintiff and Plaintiff shall not unreasonably withhold assent.  To the extent possible, the parties shall endeavor to work out any informal extension requests without resort to intervention by the Court.  No extension of time permitted in order to consummate the monetary payment to Mr.  Savage shall result in any modifications to the deadlines required under this Decree without leave of court. In the event the Board of Public Works refuses to approve payment of this relief, this Decree shall become null and void.

29.     Along with the payment to Franklin Savage, State Defendants shall issue Savage a United States Internal Revenue Service Form 1099 for the amount in Paragraph 26.   State Defendants shall send the 1099 to Franklin Savage's designated counsel.

30.     In exchange for the payment of the amount described in Paragraph 26, as well as entry into this Decree, the Franklin Savage will sign a release of claims and return it to the State

Defendants within thirty (30) days of entry of the Decree. The allotted time period for execution of the release form may be extended for good cause.

31.     Within three (3) business days of the issuance of the payment referenced in Paragraph 26, State Defendants shall furnish a copy of the checks or other payment method and related correspondence to Plaintiff's and the United States' counsel.

32.     This Decree does not relate to the claims asserted against any other Defendants in this case, including Pocomoke City (which is covered by another agreement).

## VIII.  RECORDKEEPING AND COMPLIANCE MONITORING

33.     For the duration of this Decree as set forth in Section XII, upon written request of the United States, Sheriff Crisafulli will send a report to counsel for the United States identifying all complaints of employment discrimination within the CET on the basis of race, including racial harassment, and any related complaints of retaliation received by the Worcester County Sheriff's Office internally, through the EEOC, or through any other federal or state agency. The United States shall not make such requests more often than once every two months. At a minimum, the reports provided to counsel for Plaintiff and the United States shall include the following:

a.  the date of the complaint and the date the complaint was received by State Defendants (if different from the date of the complaint);

b.  whether the complaint was oral or written;

c.  a detailed description of the complaint;

d.  the name(s) and title(s) of individual(s) who conducted or are conducting the investigation on State Defendants' behalf, the date the investigation was concluded, and the steps taken during the investigation;

e.  if an investigation is ongoing, the stage of the investigation, the name(s) of the individual(s) interviewed, and an estimate of when the investigation is expected to conclude;

f.  the findings of the investigation and nature of any corrective action or discipline given;

g.  the findings and/or summary of the review of the investigative findings undertaken pursuant to Paragraphs 16-19, including any determinations regarding conflicts of interest as described in Paragraph 18; and

h.  a description of State Defendants' efforts to ensure that the measures implemented under Paragraphs 16-19 were carried out with regards to the complaint.

34.  Upon request of counsel for Plaintiff or the United States, State Defendants shall produce additional documents and information relating to any complaint of discrimination or retaliation identified in a report to counsel for the United States within fifteen (15) days of a written request to State Defendants' counsel.

35.  For the duration of this Decree as set forth in Section XII, Sheriff Crisafulli shall retain all records relevant to compliance with the implementation of this Decree, and retain all records relating to any alleged discrimination within the CET.

36.  Upon reasonable request of counsel for the United States, Sheriff Crisafulli will produce additional records and documents relevant to his compliance with the implementation of this Decree (including documents described in Paragraph 33) to counsel for the United States within thirty (30) days of any written request to State Defendants' counsel.

## IX.  DISPUTE RESOLUTION

37.  The Parties shall attempt to resolve informally any dispute that may occur under this Decree.  The Parties shall engage in good faith efforts to resolve the issue before seeking action

17

by the Court. If the Parties are unable to expeditiously resolve the issue, any party may move the Court to enforce this agreement and may seek a ruling that enforces this Court Order, provided that written notice is first provided to the other party at least seven (7) days in advance of taking such action.

## X.    RETENTION OF JURISDICTION

38.    For the duration of the decree, the Court will retain jurisdiction over this Decree for the purposes of implementing the relief provided herein, and resolving any disputes or entering any orders that may be necessary to implement the relief provided herein.

## XI.  ADDITIONAL PROVISIONS

39.    This Decree constitutes the entire agreement and all commitments between the Parties to this Decree.

40.    If any provision of this Decree is found to be unlawful, only the specific provision in question will be affected and the other provisions will remain in full force and effect.

41.    If in the execution of this Decree any provision of this Decree is found to be in conflict with the Maryland Law Enforcement Officers Bill of Rights, Md. Code Ann., Pub. Safety §§ 3-101 – 3-113, the provisions of the Maryland Law Enforcement Officers Bill of Rights shall control.

42.    There is no private right of action to enforce State Defendants' obligations under the Decree and only the Plaintiff or the United States, or their successors or assigns, may enforce compliance herewith.

43.    The Parties agree that, as of the date of entry of this Decree, additional litigation regarding this matter is not reasonably foreseeable. To the extent that any party previously implemented a litigation hold to preserve documents, electronically stored information, or things

related to this matter, the party is no longer required to maintain such a litigation hold.  Nothing in this Paragraph relieves any party of any other obligations imposed by this Decree, including the obligation to maintain documents demonstrating compliance with this Decree.

44.     The Parties shall bear their own costs, expenses, and attorneys' fees in this action, including the costs of compliance or monitoring, except that the Parties shall retain the right to seek costs and fees (as permitted by law, including any applicable case law) for any matter which, in the future, may arise from this Decree and require resolution by the Court.

45.     The time limits set forth throughout Sections V-VII of this Decree may be expanded by mutual consent of the Parties or upon motion to the Court following written notice to the other party.

46.     All documents required to be delivered under this Decree to Plaintiff will be sent to the following address:

> Dennis A. Corkery
> Washington Lawyers' Committee for
> Civil Rights and Urban Affairs
> 700 14th St., NW  Suite 400
> Washington, D.C.  20005
> Dennis_Corkery@washlaw.org

47.     All documents required to be delivered under this Decree to the United States shall be sent to the following address:

> Karen Woodard, Deputy Chief
> Hillary Valderrama, Senior Trial Attorney
> Employment Litigation Section
> 150 M Street, NE
> Washington, D.C. 20002
> karen.woodard@usdoj.gov
> hillary.valderrama@usdoj.gov

48.     All documents required to be delivered under this Decree to State Defendants will be sent to the following addresses:

19

Carl N. Zacarias
Assistant Attorney General
Maryland State Treasurer's Office
Tort Claims Litigation Unit
80 Calvert Street, 4th Floor
Annapolis, Maryland 21401
czacarias@treasurer.state.md.us

49.     Any party may update mailing or electronic addresses to all other parties without requiring any changes to this Consent Decree.

50.     This Decree may be executed in multiple counterparts, each of which together shall be considered an original but all of which shall constitute one Agreement.  The Parties agree to be bound by facsimile signatures.

## XII.     DURATION OF THE DECREE AS TO THE UNITED STATES

51.     Unless otherwise ordered by this Court pursuant to paragraph 52, this Decree shall expire with respect to the United States twenty-four (24) months from the date of Entry of the Decree without further order of the Court.  After this time is reached, the United States may not seek to enforce any provision of this Decree and State Defendants are not required to furnish any documentation to the United States pursuant to Section VIII.

52.     The United States may move the Court to extend the duration of the Decree, and the Court may extend the term upon a showing that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance.

## XIII.    DURATION OF THE DECREE AS TO PLAINTIFF

53.     Unless otherwise ordered by this Court, and absent the pendency of any motion related to this Decree, this Decree shall expire with respect to the Plaintiff upon payment to

Plaintiff by the State Defendants and receipt of the corresponding 1099 pursuant to Paragraphs 26

through 29 without further order of the Court.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

FRANKLIN SAVAGE

DATE: _7-15-20_

Franklin Savage

SHERIFF MATTHEW CRISAFULLI

DATE:
_____July 20, 2020_____

/S/

BRIAN E. FROSH
Attorney General of Maryland
CARL N. ZACARIAS
(Bar No. 28126)
Assistant Attorney General
State Treasurer's Office
80 Calvert Street, 4th Floor
Annapolis, Maryland 21401
(410) 260-6139
czacarias@treasurer.state.md.us

UNITED STATES OF AMERICA

DATE: *July 13, 2020*

ERIC S. DREIBAND
Assistant Attorney General
Civil Rights Division

DELORA L. KENNEBREW (GA Bar No. 414320)
Chief
Employment Litigation Section
Civil Rights Division

*/S/ Karen D. Woodard*
KAREN D. WOODARD (MD Bar)
Principal Deputy Chief
Employment Litigation Section
Civil Rights Division

*/S/ Hillary K. Valderrama*
HILLARY K. VALDERRAMA (TX Bar No. 24075201)
EMILY GIVEN (NY Reg. No. 5420211)
Senior Trial Attorneys
Civil Rights Division
Employment Litigation Section, PHB 4918
950 Pennsylvania Avenue, NW
Washington, DC 20530
Telephone: (202) 305-3034
Fax: (202) 514-1005
Hillary.Valderrama@usdoj.gov
Emily.Given@usdoj.gov

And, the Clerk is directed to close this case.

It is so ORDERED this 30th day of ___Sept-___, 2020.

_Ellen L. Hollander_
Hon. Ellen L. Hollander
United States District Judge